## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DIAMONDS DIRECT USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. |
| | ) | _____ |
| I-LUXURY ENTERPRISES, INC. | ) | |
| d/b/a SOLOMON BROTHERS | ) | |
| JEWELERS, and LYNN TU | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Diamonds Direct USA, Inc. ("Diamonds Direct" or "Plaintiff"), and files its Verified Complaint for preliminary and permanent injunctive relief and damages against I-Luxury Enterprises, Inc. d/b/a Solomon Brothers Jewelers ("Defendant Solomon Brothers" or "Solomon Brothers") and Lynn Tu ("Defendant Tu") (collectively "Defendants"). In support of its Verified Complaint, Plaintiff states as follows:

## I.   INTRODUCTION

1.

This is an action to restrain and enjoin: (1) Defendant Tu from breaching restrictive covenants entered into with Plaintiff; (2) Defendant Solomon Brothers

from continuing to unlawfully and tortiously interfere with the at-will relationship existing between Plaintiff and its employees; and (3) Defendant Solomon Brothers from continuing to interfere with certain restrictive covenants entered into by and between Plaintiff and Defendant Tu; and

This action further seeks to restrain and enjoin: (4) Defendant Tu from continuing to use certain confidential information and trade secrets in violation of Defendant Tu's employment agreement; and (5) Defendant Tu and those acting in concert with her from misappropriating Plaintiff's trade secrets from being used for illegal competition in violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b) and the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq.* Plaintiff also seeks to recover all damages available at law, along with its expenses of litigation.

## II.   **PARTIES, JURISDICTION AND VENUE**

2.

Plaintiff Diamonds Direct USA, Inc. is a Foreign Profit Corporation with a principal office located in Charlotte, NC.

3.

Defendant Solomon Brothers is a Domestic Profit Corporation with a principal office located at 3340 Peachtree Rd NE #1700, Atlanta, Georgia, in Fulton County. Solomon Brothers may be served with process by service upon its registered

agent at the same address.

4.

Defendant Lynn Tu is a former employee of Diamonds Direct and an individual resident of South Carolina. She may be served at Solomon Brothers, 3340 Peachtree Rd NE #1700, Atlanta, Georgia, in Fulton County.

5.

This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as complete diversity exists between the parties and the amount in controversy exceeds $75,000. The Court also has jurisdiction under 28 U.S.C. § 1331 because this action raises claims under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836(c). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same operative facts as the federal claim.

6.

Personal jurisdiction is proper in Georgia because Defendant Solomon Brothers is incorporated and headquartered in Georgia and conducts business in Georgia, and the tortious conduct alleged herein occurred in this state.

7.

Venue is proper in this district under 28 U.S.C. § 1391(b) because one or more Defendants reside in this district and/or the events or omissions giving rise to the

claims occurred and continue to occur in this district.

## III.   FACTUAL ALLEGATIONS

*Nature of Diamonds Direct's Business*

8.

Diamonds Direct is one of America's largest and most successful jewelry companies, with 31 locations across the United States.

9.

Diamonds Direct obtained its competitive advantage by building relationships with diamond traders worldwide, developing designs and pricing metrics, along with strategies to design, market and sell its products.

10.

Diamonds Direct has devoted significant monetary resources and applied specialized knowledge of the diamond market in order to maintain its competitive advantage. In developing such, Diamonds Direct's efforts include extensive research, including trial and error techniques, the implementation of various store displays, marketing strategies, management of employee compensation and benefits, and building relationships with suppliers and customers.

11.

Diamonds Direct recently registered in Georgia with the intention of opening a location in Atlanta.

12.

In order to open the Atlanta location, Diamonds Direct leased property at 3225 Peachtree Road NE, Atlanta, Georgia 30305, a prominent retail space costing tens of thousands of dollars per month. Further, Diamonds Direct undertook significant renovations to update the exterior of the building and bring the site into compliance with the Americans with Disabilities Act (ADA), which cost the company millions of dollars, including the necessary permits to complete the renovations.

13.

The planned expansion involved Diamonds Direct conducting extensive and costly research into the local market, including promotional strategies, compensation studies, how to comply with state and local regulations, and area sales trends to inform what inventory to stock and how to display and advertise the store's products.

14.

Diamonds Direct's secretive processes, relationships, research, and techniques constitute essential and invaluable elements of its business.

15.

Diamonds Direct takes measures to protect its trade secrets and confidential information, including its sourcing, customer information, design, display, marketing strategies, and pricing, as well as other sensitive business information, from becoming available to persons other than those selected by Diamonds Direct

to have access. Those measures include, but are not limited to, allowing access only to certain designated employees, requiring employees to sign non-compete and confidentiality agreements, and other security measures.

16.

Diamonds Direct derives actual and potential economic value from the fact that its confidential information and trade secrets are not generally known to, nor readily ascertainable by, proper means by others who can obtain economic value from its disclosure or use.

17.

Diamonds Direct has legitimate business interests in protecting its trade secrets and confidential information, including, but not limited to, its methods of operations, sourcing, procedures, pricing, designs, and displays, and information concerning materials and marketing.

*Diamonds Direct's Employment of Defendant Tu*

18.

Defendant Tu was hired by Diamonds Direct as a sales associate on or about July 1, 2015.

19.

Defendant Tu was promoted to the position of Vice President on or about January 1, 2020.

20.

On August 9, 2021, she executed a Vice President Employment Agreement ("VP Agreement"). A true and correct copy of the VP Agreement is attached hereto as Exhibit A.

21.

By virtue of her position as Vice President, Defendant Tu participated in developing store sales budgets, setting financial goals, managing inventory, hiring and training sales associates, and managing day-to-day operations, including staffing, and the display of products in the store, among other duties.

22.

Additionally, as Vice President, Defendant Tu became aware of Diamonds Direct's trade secrets and confidential information including, but not limited to, Diamonds Direct's methods of operation, specialized procedures, sourcing, customer data, troubleshooting processes, plans for expansion, marketing, pricing, and design.

23.

Defendant Tu was also involved in the creation and revision of Diamonds Direct's specific operating procedures, marketing plans, and in building and maintaining relationships with customers, all of which were the result of Diamonds Direct's extensive research, networking, marketing, and sourcing efforts.

24.

Defendant Tu managed Diamonds Direct's Charleston, South Carolina location after her promotion to Vice President. In addition, on April 17, 2021, Ms. Tu became responsible for Diamonds Direct's Greenville, South Carolina location.

25.

Defendant Tu was put in charge of Diamonds Direct's Atlanta store to oversee preparations for the launch of the store. The announcement of her new position was made to the company's leadership team in late January 2024. A true and correct copy of the email sent memorializing same is attached as Exhibit B.

26.

In her role overseeing the launch of Diamonds Direct's new location, Defendant Tu was instrumental in developing the company's business plan to enter the Atlanta market.

27.

Defendant Tu was charged by Plaintiff with conducting market research related to the store. Further, she hired and trained employees and made decisions regarding employee compensation; chose which inventory to stock; and developed marketing plans, including strategies for promoting the opening of the store and advertising merchandise.

28.

8

Diamonds Direct invested thousands of dollars to pay for Defendant Tu to travel back and forth from Charleston to Atlanta in order to launch the Atlanta store. She also received a significant raise as a result of her assignment to launch the new location.

29.

By virtue of her role overseeing Diamonds Direct's expansion into Atlanta, Defendant Tu had extensive knowledge of the Atlanta market, the store's potential customer base, area sales trends, and the company's plans for promotion and outreach. All of this information was developed, paid for, and researched at the expense of Diamonds Direct.

30.

Defendant Tu's sister, Kim Tu-Chau ("Ms. Tu-Chau"), was hired by Diamonds Direct as a sales associate on or about October 29, 2012.

31.

Ms. Tu-Chau executed an "Employment Agreement and Covenant Not to Compete" (hereinafter "Agreement") upon hire. A true and correct copy of the Agreement is attached hereto as Exhibit C.

32.

By virtue of her position, Ms. Tu-Chau had access to Diamonds Direct's pricing, customer data, and sales and promotional strategies.

9

33.

In her sales role, Ms. Tu-Chau became aware of Diamonds Direct's trade secrets and confidential information, including, but not limited to, Diamonds Direct's methods of operation, specialized procedures, sourcing, troubleshooting processes, customer data, plans for expansion, marketing, pricing, and design.

*Trade Secrets and Noncompetition Provisions of*
*Defendant Tu's Vice President Employment Agreement*

34.

The Agreements executed by Defendant Tu and Ms. Tu-Chau contained nondisclosure and noncompetition provisions, which imposed restrictions on their respective abilities both to utilize Diamonds Direct's confidential information and to compete with Diamonds Direct during the course of their employment and thereafter.

35.

Paragraph 8 of Ms. Tu's VP Agreement provides, in pertinent part:

(b)   Confidentiality. You agree that both during and after your employment, you will not use or reveal (directly or indirectly) to any Person, and will keep in the strictest confidence, all Confidential Information, except (i) as may be necessary to perform your duties hereunder, (ii) with Company's express written consent, (iii) to the extent that any such Confidential Information enters the public domain other than as a result of your breach of this Agreement or any other agreement with Company Group to which you are a party, or (iv) if required to be disclosed by court order or other government process (and in such event, you will cooperate with Company in attempting to

keep such information confidential). At Company's request, you will promptly deliver to Company the originals and all copies of all Confidential Information in your possession or control.

(c)     Non-Competition.

(i) You agree that, during the Restricted Period, you will not provide Competitive Services (other than for Company) within the Territory either: (i) directly; or (ii) indirectly by serving as a manager of one or more salespersons for a Person. The term "Competitive Services" means the sale of fine jewelry, diamonds, settings and high-end watches. The term "Restricted Period" means during your employment and for 12 months thereafter (which period will be automatically extended by one day for each day that you are in breach of this Agreement); and "Territory" means within a twenty-five (25) mile radius of the Stores.

36.

Similarly, Ms. Tu-Chau's Agreement states:

2.     Non-Competition. In consideration of the Company hiring Employee on the terms described above, Employee hereby agrees that during the Non-Competition Period (as defined below), the Employee shall not, directly or indirectly... (i) solicit Business (as defined below) from any Customer (as defined below) of the Company with which he has had material contact during the term of his employment, (ii) employ or recruit for employment, on his own behalf or for any company engaged in the Business, any person employed by the Company as of the date of the termination of the Employee's employment, or (iii) in the Non-Competition Territory (as defined below) serve in the Business in a capacity identical to or similar to that capacity in which the Employee worked at the Company except that Employee may own up to 1% of the shares of a publicly-traded company that is engaged in the Business.

For the purposes of this Section, "Business" shall mean the business of importing and retail sales of diamonds and jewelry. "Customer" shall mean any person or entity that purchased any goods or services from the Company and with whom Employee had contact during the twelve

11

months immediately preceding the date of termination of Employee's employment. The "Non-Competition Period" shall mean a period of twelve months following the termination, for any reason, of Employee's employment. "Non-Competition Territory" means that:

a)     geographic territory within a fifty (50) mile air radius from the office of the Company's store to which the Employee is assigned at the time of termination; or

b)     if the preceding subdivision is determined by a court of competent jurisdiction to be too broad, the territory shall be a twenty-five (25) mile air radius from the Company's store to which Employee is assigned at the time of termination.

5.     <u>Confidential Information</u>. The Employee acknowledges that in and as the result of his employment by the Company, he will be making use of, acquiring, and/or adding to confidential information, knowledge or data of a special and unique nature and value not generally available to the public relating to such matters as the Company's proprietary information, trade secrets, systems, procedures, manuals, confidential reports, financial information, pricing lists, marketing plans, and list of customers, as well as the products and services used and preferred by the Company's customers and the prices paid by them (all of the foregoing being deemed for all purposes confidential and proprietary and being referred to collectively herein as "Confidential Information.") The Employee covenants and agrees that he will not, at any time during or following the term of his employment, directly or indirectly, use for any purpose other than work for the Company, or divulge or disclose to any unauthorized person or entity, any Confidential Information that has been obtained by or disclosed to him as the result of his employment by the Company, except to the extent such information becomes publicly available or the Employee is required by law to disclose such information. The Employee further agrees that, upon termination of his employment with the Company for any reason, he will return to the Company any and all materials made or received by him containing any Confidential Information.

37.

Defendant Tu and Ms.Tu-Chau executed and acknowledged to be bound by

the terms of their respective Agreements, including the relevant noncompetition and nondisclosure provisions.

38.

On June 11, 2024, Diamonds Direct sent demand letters to Defendant Tu and Ms. Tu-Chau reminding them of their contractual obligations to Diamonds Direct and requesting confirmation of their compliance with said obligations within two business days. True and correct copies of these letters are attached hereto as Exhibits D and E.

*Solomon Brothers' Recruitment and Solicitation of Diamonds Direct Employees*

39.

Solomon Brothers engages in the sale of diamond jewelry and watches through retail locations in metropolitan Atlanta, along with appraisal, repair and design services.

40.

In or around fall 2023, Defendant Solomon Brothers learned of Diamonds Direct's intention to enter the Atlanta market.

41.

After learning of Diamonds Direct's intention to open an Atlanta location, a Solomon Brothers representative threatened suppliers at a 2023 trade show in Arizona by vowing to stop doing business with any supplier who contracted with

Diamonds Direct.

42.

Pursuant to the respective noncompete agreements executed by the Individual Defendants, Solomon Brothers qualifies as a "Competing Business" or "Competitor" of Diamonds Direct. As a diamond and jewelry store, Solomon Brothers designs, markets, sells and distributes products and services substantially the same as those sold, marketed, distributed, and designed by Diamonds Direct during the course of the Individual Defendants' employment.

43.

On May 24, 2024, both Defendant Tu and Ms. Tu-Chau abruptly resigned from Diamonds Direct, informing the company they needed to do so in order to care for an ailing parent. True and correct copies of their respective resignation letters are attached as Exhibits F and G.

44.

Diamonds Direct's Atlanta location was scheduled to open approximately one month after the resignations.

45.

Diamonds Direct has since learned that both Defendant Tu and Ms. Tu-Chau accepted employment with Solomon Brothers, in direct violation of their respective contracts with Diamonds Direct.

14

46.

Solomon Brothers operates a location 1 mile from Diamonds Direct's soon-to-open Atlanta store. Defendant Tu now works at this location. Declarations by two Diamonds Direct employees stating the same are attached hereto as Exhibits H and I.

47.

Because Solomon Brothers is a "Competing Business" or "Competitor" under Diamonds Direct's noncompetition agreements, both Defendant Tu and Ms. Tu-Chau are barred from performing similar services for Solomon Brothers as they did for Diamonds Direct for the twelve months after their respective resignations.

48.

At the time of her departure, Ms. Tu-Chau was a salesperson with Diamonds Direct. By virtue of her position with Diamonds Direct, she was trained in and has knowledge of Diamonds Direct's sales strategies and relationships, including information about customers, studying the market in the area, pricing, design, and promotional and advertising strategies and materials.

49.

Upon information and belief, Ms. Tu-Chau's resignation from Diamonds Direct was the result of Defendant Solomon Brothers' recruitment and solicitation efforts.

50.

In her new role at Solomon Brothers, Ms. Tu-Chau is performing virtually the same or similar services as she provided to Diamonds Direct before her resignation, in direct violation of her Agreement with Diamonds Direct.

51.

Since starting with Solomon Brothers, Ms. Tu-Chau has directly solicited at least one Diamonds Direct customer with whom she had material contact while employed by Diamonds Direct. Pierre Myles, a Diamonds Direct customer since 2012 consulted with Ms. Tu-Chau directly on a custom order on or about December 12, 2023. Ms. Tu-Chau contacted Mr. Myles after being hired by Solomon Brothers and solicited his business. A declaration by customer Pierre Myles, dated June 8, 2024, is attached hereto as Exhibit J. Additionally, Mr. Myles' Diamonds Direct customer profile is attached hereto as Exhibit K.

52.

Upon information and belief, Defendant Tu's resignation from Diamonds Direct was the result of Defendant Solomon Brothers' recruitment and solicitation efforts.

53.

Defendant Tu is now employed by Solomon Brothers. At Solomon Brothers, Defendant Tu is performing virtually the same or similar services as she provided

before her employment relationship ended with Diamonds Direct, in direct violation of her VP Agreement.

54.

By virtue of their positions while employed with Diamonds Direct, Diamonds Direct provided Defendant Tu and Ms. Tu-Chau with access to its trade secrets and other confidential and proprietary information, including sourcing, pricing, marketing, plans for expansion, inventory information, and design and display strategies, among other confidential and proprietary information.

55.

Upon information and belief, Defendant Tu and Ms. Tu-Chau have disclosed and used Diamonds Direct's trade secrets and confidential information for the benefit of Solomon Brothers in direct contradiction of their contractual obligations. Moreover, the nature of their positions with Solomon Brothers will require that they have or will inevitably disclose and/or use Diamonds Direct's trade secrets for the benefit of Solomon Brothers.

56.

Diamonds Direct sent a letter on June 11, 2024 to Jaron Solomon, Chief Executive Officer of Defendant Solomon Brothers, demanding the company cease and desist its tortious conduct, namely to terminate Defendant Tu's employment and to ensure Ms. Tu-Chau desist from further solicitation of customers and employees

17

of Diamonds Direct. A true and correct copy of this letter is attached hereto as Exhibit L.

## IV.   CAUSES OF ACTION

### COUNT I:
**VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT**
**18 U.S.C. § 1836**
**Against Defendant Tu**

57.

Paragraph 1 through 56 of this Verified Complaint are hereby incorporated by reference as if fully set forth herein.

58.

The Defend Trade Secrets Act ("DTSA") of 2016 forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

59.

"Trade secrets" are broadly defined under DTSA to include "all forms and types of financial, business, scientific, technical, economic, or engineering information."

60.

During her employment, Defendant Tu had access to confidential and proprietary information which constituted Diamonds Direct's trade secrets. As

18

described above, this included, but was not limited to, Diamonds Direct's sourcing, strategies, plans for expansion, sales strategies, financial information and projections, marketing and design, as well as other sensitive business information.

61.

Defendant Tu shared this information with her new employer, Solomon Brothers, or used this information herself, in order to directly compete with Diamonds Direct while performing essentially the same job duties which she was directly responsible for as an employee of Diamonds Direct.

62.

This information is related to numerous products used in, or intended for use in, interstate commerce.

63.

This information (1) is not known outside Diamonds Direct; (2) is known only by select Diamonds Direct employees, including Defendant Tu, and others involved in the business; (3) is subject to reasonable measures to guard the secrecy of the information, including Diamonds Direct's policies; (4) is valuable; and (5) is difficult for others to properly acquire or independently duplicate.

64.

Defendant Tu knew she had a duty, pursuant to her VP Agreement and Diamonds Direct's policies, to maintain the secrecy of Diamonds Direct's trade

secrets.

65.

Defendant Tu can use this information to directly compete with Diamonds Direct in the diamond and jewelry business.

66.

Defendant Tu has also used this information without Diamonds Direct's knowledge, consent, or authorization to benefit herself and Solomon Brothers in a manner that will cause irreparable harm to Diamonds Direct.

67.

Defendant Tu's actions constitute actual and continuing misappropriation in violation of the DTSA.

68.

Diamonds Direct has suffered damages and irreparable harm as a result of Defendant Tu's breaches of the DTSA.

69.

Diamonds Direct is entitled to recover actual damages.

70.

Diamonds Direct's damages cannot be adequately compensated through remedies at law alone, thereby requiring both equitable and compensatory relief.

71.

Defendant Tu's actions will continue to cause irreparable harm and damages to Diamonds Direct if not restrained.

## COUNT II:
## VIOLATION OF THE GEORGIA TRADE SECRETS ACT OF 1990
## O.C.G.A. § 10-1-760 *et seq.*
## Against Defendant Tu

Paragraphs 1 through 71 of this Verified Complaint are hereby incorporated by reference as if fully set forth herein.

72.

The proprietary and confidential business information referred to above also constitutes "trade secrets" as defined by the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760, *et seq.* ("GTSA"). That trade secret information includes Diamonds Direct's customer and supplier data, marketing strategies, pricing, financial information, product plans, and designs, among others.

73.

Diamonds Direct takes reasonable efforts under the circumstances to maintain the confidentiality of its trade secrets.

74.

Defendant Tu's continued disclosure and use of Diamonds Direct's trade secrets have occurred and will occur without the express or implied consent of Diamonds Direct.

75.

At the time of Defendant Tu's use or disclosure of trade secrets, she knew or had reason to know that her knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy.

76.

Upon information and belief, Defendant Tu has taken, used, and disclosed this trade secret information prior to her resignation and has used and/or disclosed this information after her resignation.

77.

Diamonds Direct's trade secrets continue to be actually misappropriated and/or threatened to be misappropriated by virtue of Defendant Tu's performance of essentially the same job duties and responsibilities as she performed while employed with Diamonds Direct.

78.

Pursuant to O.C.G.A. § 10-1-672, Defendant Tu's actual and/or threatened misappropriation of Diamonds Direct's trade secrets entitles Diamonds Direct to injunctive relief, namely the immediate termination of her employment by Solomon Brothers.

79.

Pursuant to O.C.G.A. § 10-1-673(a), Defendant Tu is liable to Diamonds

Direct for the actual loss caused by her misappropriations and for any unjust enrichment caused by the misappropriations that cannot be taken into account in computing the actual loss or, alternatively, for damages caused by the misappropriations measured in terms of a reasonable royalty for Defendant Tu's disclosure and use.

80.

The misappropriations as described above were willful and malicious, entitling Diamonds Direct to an award of exemplary damages pursuant to O.C.G.A. § 10-1-763(b).

81.

The misappropriations as described above were willful and malicious, entitling Diamonds Direct to an award of reasonable attorneys' fees pursuant to O.C.G.A. § 10-1-764.

## COUNT III:
## BREACH OF CONTRACT
### Against Defendant Tu

82.

Paragraphs 1 through 81 of this Verified Complaint are hereby incorporated by reference as if fully set forth herein.

83.

Pursuant to the terms of Defendant Tu's VP Agreement, she owed contractual

obligations to Diamonds Direct to refrain from engaging in any business activity Diamonds Direct conducted during the period of her employment and for a period of 12 months after her employment ended. Diamonds Direct has legitimate business interests justifying the need for the restrictive covenants: namely, protection of its trade secrets and confidential information, among others.

84.

Solomon Brothers, as a direct competitor in the diamond and jewelry industry, engages in business activity that Diamonds Direct conducted during Defendant Tu's employment with Diamonds Direct.

85.

Defendant Tu has breached the noncompetition covenant in her VP Agreement by virtue of her employment with Solomon Brothers.

86.

Further, pursuant to the terms of the Defendant Tu's VP Agreement, she owed a contractual obligation to Diamonds Direct to refrain from the disclosure or use of Diamonds Direct's confidential information and trade secrets.

87.

Upon information and belief, Defendant Tu has disclosed and utilized Diamonds Direct's confidential information and trade secrets for the benefit of its direct competitor, Solomon Brothers, in violation of the nondisclosure provision in

her VP Agreement.

88.

Diamonds Direct has been injured by Defendant Tu's breach of the VP Agreement in an amount which cannot be readily ascertained or compensated by money damages.

89.

Diamonds Direct has performed all its duties under the VP Agreement.

90.

Unless Defendant Tu is enjoined from further breaches of her contractual duties, Diamonds Direct will suffer irreparable injury in that Defendant Tu will continue to disclose and utilize confidential company information and processes to the direct benefit of its competitor in violation of the noncompetition covenant.

91.

Defendant Tu's actions constitute material breaches of the terms of the VP Agreement she entered into with Diamonds Direct, thus entitling Diamonds Direct to recover all actual compensatory damages caused by operation of such breaches including lost sales, profits, and other expenses, together with Diamonds Direct's expenses of litigation, including Diamonds Direct's reasonable attorneys' fees incurred in bringing this action.

<u>**COUNT IV:**</u>
**TORTIOUS INTERFERENCE WITH CONTRACTUAL AND AT-WILL BUSINESS RELATIONSHIPS**
**Against Defendant Solomon Brothers**

92.

Paragraphs 1 through 91 of this Verified Complaint are hereby incorporated by reference as if fully set forth herein.

93.

Solomon Brothers' actions in actively recruiting and soliciting Diamonds Direct employees constitutes unlawful tortious interference with Diamonds Direct's at-will employee relationships.

94.

Solomon Brothers has encouraged Defendant Tu and Ms. Tu-Chau to breach their noncompetition covenants by simply competing with Diamonds Direct through their employment with Solomon Brothers.

95.

By reason of the actions of Defendants as herein alleged, Diamonds Direct has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law unless and until such conduct is enjoined.

96.

26

Diamonds Direct further prays that it recover compensatory damages caused by operation of Defendants' tortious conduct together with such other relief, including injunctive relief as the Court may deem just and proper.

**COUNT V:**
**ATTORNEYS' FEES**

97.

Paragraphs 1 through 96 of this Verified Complaint are hereby incorporated by reference as if fully set forth herein.

98.

Defendants have acted in bad faith and caused Diamonds Direct unnecessary trouble and expense and are therefore liable to Diamonds Direct for its reasonable attorneys' fees and other expenses of litigation pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial.

**V.    DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for each claim for which it has a right to a jury.

**VI.    PRAYER FOR RELIEF**

WHEREFORE, Diamonds Direct respectfully requests this Court temporarily and preliminarily enjoin Defendants and those acting in concert with them, and pray for the following relief:

27

(a)     That summons and process issue and Defendants be served according to applicable law;

(b)     That an immediate hearing on Diamonds Direct's prayer for interlocutory injunction be held;

(c)     That preliminary and permanent injunctions issue as sought herein, ordering the following:

1) That Defendant Tu, for a period of one (1) year commencing from the date of her resignation of employment with Diamonds Direct, be enjoined from continuing her employment with Solomon Brothers, as required by her VP Agreement;

2) That Defendant Solomon Brothers be preliminarily and permanently enjoined from interfering with Diamond Directs' contractual relationships with Defendants Tu and Kim Tu-Chau by, inter alia, continuing to employ Defendant Tu in violation of the Vice President Agreement and/or encouraging Tu-Chau to solicit Plaintiff's customers;

3) That Defendant Tu and those acting in concert with her be enjoined from soliciting or attempting to solicit, directly or indirectly, Diamonds Direct's employees for employment with Solomon Brothers;

4) That Defendants and those acting in concert with them be enjoined from using, divulging or disclosing any of Diamonds Direct's confidential information and trade secrets;

5) That Defendant Tu be restrained and enjoined from continuing to and/or threatening to misappropriate Diamonds Direct's trade secrets in violation of the Federal Defend Trade Secrets Act and the Georgia Trade Secrets Act;

(d)   That Diamonds Direct be awarded actual and compensatory damages for Defendant Tu's misappropriation of trade secrets, material breaches of her VP Agreement, and tortious conduct;

(e)   That Diamonds Direct be awarded exemplary damages pursuant to O.C.G.A. § 10-1-763(b);

(f)   That on all available causes of action, Diamonds Direct be awarded damages caused by misappropriation measured in terms of a reasonable royalty or, alternatively, a constructive trust be placed on Solomon Brothers' profits;

(g)   That on all available causes of action, award prejudgment, post judgment, and all other interest provided by law;

(h)   That Diamonds Direct recover its expenses of litigation including its reasonable attorneys' fees and costs in bringing this action;

29

(i)     That Diamonds Direct be awarded discovery on an expedited basis in furtherance of its application for broad or equitable relief; and

(j)     That Diamonds Direct recover such other relief as the Court may deem just and proper.


DATED this 14th of June, 2024.


**FORD & HARRISON LLP**
271 17th Street, N.W.
Suite 1900
Atlanta, GA 30363
Telephone: (404) 888-3800
Facsimile:  (404) 832-8728

*/s/ John Monroe*
John L. Monroe, Jr.
Georgia Bar No. 516190
jmonroe@fordharrison.com
K. Maxwell Bernas
Georgia Bar No. 598168
mbernas@fordharrison.com
Laura T. Yellig
Georgia Bar No. 982299
lyellig@fordharrison.com

*Attorneys for Plaintiff Diamonds Direct USA, Inc.*